UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Central Housewares, Inc.  
d/b/a The Pool People

    Debtor.

Case No. 24-20408-kmp

Chapter 11 (Subchapter V)

---

Central Housewares, Inc.  
d/b/a The Pool People,

    Plaintiff,

v.

U.S. Small Business Administration,

Channel Partners Capital, LLC,

ODK Capital, LLC,

EBF Holdings, LLC d/b/a Everest Business Funding,

Atipana Credit Opportunity Fund I, LP d/b/a Fundr,

Aquatech Corporation, d/b/a United Aqua Group

    Defendants.

Adv. No. 24-XXXXX-kmp

---

## NOTICE OF MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION

**To: Defendants**

U.S. Small Business Administration  
310 W. Wisconsin Ave., Suite 580W  
Milwaukee, WI 53203  
740 Regent St., Suite 100  
Madison, WI 53715

Jennifer K. Power  
U.S. Small Business Administration  
Cleveland District Counsel  
65 East State St., Ste. 1350  
Columbus, OH 43215-4237

| | |
|---|---|
| ODK Capital, LLC<br>CT Corporation System<br>301 South Bedford Street, Suite 1<br>Madison, WI 53703 | EBF Holdings, LLC d/b/a Everest Business Funding<br>National Registered Agents, Inc.<br>1209 Orange St.<br>Wilmington, DE 19801 |
| Atipana Credit Opportunity Fund I, LP<br>d/b/a Fundr<br>National Registered Agents, Inc<br>1209 Orange St.<br>Wilmington, DE 19801 | Channel Partners Capital, LLC<br>Corporation Trust Center<br>1209 Orange St.<br>Wilmington, DE 19801 |

Marcella Rabinovich, Esq.
100 Merrick Rd #W212
Rockville Centre, NY 11570

Aquatech Corporation, d/b/a United Aqua Group
The Corporation Trust Company
1209 Orange St.
Wilmington, DE 19801

John Bragonje
LEWIS ROCA ROTHGERBER CHRISTIE LLP
3993 Howard Hughes Parkway, Suite 600
Las Vegas, NV 89169

Benjamin Struby
LATHROP GPM LLP
2345 Grand Blvd., Suite 2200
Kansas City, MO 64108-2618

PLEASE TAKE NOTICE that the above-captioned plaintiff, by their counsel, Swanson Sweet LLP, filed a Motion for Entry of a Preliminary Injunction (the "**Motion**").

**Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one in the bankruptcy case. If you do not have an attorney, you may wish to consult one.**

If you do not want the Court to grant the Motion, or if you want the Court to consider your views on the matter, then no later than fourteen (14) days from the date of this notice, you or your attorney must:

File with the Court a written objection at:

Clerk of the U. S. Bankruptcy Court
Room 126, Federal Courthouse
517 E. Wisconsin Avenue
Milwaukee, WI 53202.

If you mail your objection to the Court for filing, you must mail it early enough so the Court will receive it on or before the date stated above.

You must also mail a copy to:

| Office of the U. S. Trustee | Swanson Sweet LLP |
|---|---|
| 517 E. Wisconsin Ave., Room 430 | 107 Church Avenue |
| Milwaukee, WI 53202 | Oshkosh, WI 54901 |

Any objection should state the grounds for such objection. If no objections are filed with the Court and copies mailed as instructed above, on or before the date indicated above, the Court may enter an order granting the relief requested in the Motion.

Dated: January 29, 2025.

By: */s/ Paul G. Swanson*
Paul G. Swanson
Michael C. Jurkash
107 Church Avenue
Oshkosh, WI 54901
Tel: (920) 235-6690; Fax: (920) 426-5530
pswanson@swansonsweet.com
mjurkash@swansonsweet.com

***Proposed Counsel for the Debtor***

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

Central Housewares, Inc.　　　　　　　　　　　　Case No. 24-20408-kmp
d/b/a The Pool People

　　　　　　　　　　　　　　　　　　　　　　　Chapter 11 (Subchapter V)

　　　　　Debtor.

---

Central Housewares, Inc.
d/b/a The Pool People,

　　　　　Plaintiff,

v.

U.S. Small Business Administration,　　　　　　Adv. No. 24-XXXXX-kmp

Channel Partners Capital, LLC,

ODK Capital, LLC,

EBF Holdings, LLC d/b/a Everest Business
Funding,

Atipana Credit Opportunity Fund I, LP d/b/a
Fundr,

Aquatech Corporation, d/b/a United Aqua
Group

　　　　　Defendants.

---

**MOTION FOR ENTRY OF A PRELIMINARY INJUNCTION**

**Introduction**

　　1.　　Mr. Jeffrey J. Desing is the Debtor's sole manager and sole owner. One or both of Mr. Desing and Mr. Desing's wife, Janelle Desing, have personally guaranteed the Debtor's obligations to the Defendants named in this adversary proceeding. Some Defendants—Aquatech

Corporation, d/b/a United Aqua Group ("**UAG**") and Atipana Credit Opportunity Fund I, LP d/b/a Fundr ("**Fundr**")—have already been involved in litigation against the Debtor and one or both of the Desings. The other Defendants named in this Adversary Proceeding have the personal guarantees of Mr. Desing but have not yet filed suit.

2. The Debtor filed this bankruptcy case to stay various proceedings, prevent other creditors from filing suit, and provide itself breathing room to efficiently reorganize its relationship with its creditors, including the Defendants. To that end, simultaneously with filing the above-captioned bankruptcy case, the Debtor filed schedules, its statement of financial affairs, and various motions.

3. The Debtor is quickly moving towards plan confirmation in this sub. V case and requires the full attention Mr. Desing. The Debtor's plan, once filed, will (a) pay the U.S. Small Business Administration as unimpaired (b) pay the Defendants' secured claims at a variable interest rate of prime-plus-one percent per annum over a period of 7 years, and (c) propose a dividend of approximately 20% to unsecured creditors.

4. The Debtor's plan, once filed, will also require significant contributions of time and energy from Mr. Desing in a manner consistent with the way the Debtor has always operated. He works at all times as the CEO of the debtor to the exclusion of all other activities (except his family). Nonetheless, the Debtor believes that the Defendants holding personal guarantees against the Desings will not wait the short time expected for plan confirmation in this case and instead will seek to distract Mr. Desing from his critical role in this case through collection efforts against him and Mrs. Desing.

5. The Desings have been married since 2017 and neither of them have any individual property under chapter 766 of the Wisconsin Statutes. Mrs. Desing works part time as

2

an RN and the family relies on her contribution to the household expenses to make ends meet. They have three small children. All of the Debtor's obligations incurred and guaranteed by the Desings in this case are family purpose obligations collectible from the Desings' marital property.

**Request for Relief**

6.      Through this adversary proceeding, the Debtor seeks injunctive relief prohibiting the Defendants from commencing or continuing any actions against Jeffrey Desing or Janelle Desing on account of their guaranties of the Debtor's obligations that will be paid pursuant to the plan until the time the plan is confirmed by the Court.

**Jurisdiction and Venue**

7.      This is a core proceeding over which this Court has jurisdiction pursuant to 28 U.S.C. 1334(b) and 157(b)(2)(A). The venue of this adversary proceeding is proper in the United States Bankruptcy Court for the Eastern District of Wisconsin pursuant to 28 U.S.C. § 1409(a). This adversary proceeding relates to Central Housewares, Inc., Case No. 24-20408-kmp.

**Background**

8.      The Debtor has been a retailer of pools, spas, outdoor living equipment, as well as billiards and other table games since 1976. The Debtor operates under the trade name "The Pool People" and has four brick & mortar locations across Wisconsin in Appleton, Stevens Point, Schofield, and Rhinelander.

9.      The Debtor is owned exclusively by Jeffrey J. Desing, who bought the company in 2017. Mr. Desing currently serves as the sole manager for the Debtor and is an integral part of

of the Debtor's business operations, having previously worked as a CFO for successful private-sector homebuilding, manufacturing, and health and wellness companies.

### *The UAG Obligations, Guaranty, and Lawsuit*

10. On or about December 31, 2019, the Debtor executed a Membership Agreement pursuant to which UAG granted the Debtor access to a member-only purchasing group in exchange for the Debtor's payment of membership fees and dues, and for Debtor's payment of products it purchased through the membership group.

11. The Debtor's obligations to UAG are guaranteed by Jeffrey J. Desing and Janelle Desing by virtue of a Continuing Guaranty Agreement dated December 31, 2019.

12. On September 1, 2023, UAG sued the Debtor and the Desings in the United States District Court for the District of Nevada seeking damages for an alleged breach of the membership agreement. *Aquatech Corporation d/b/a United Aqua Group v. Central Housewares, Inc. dba: The Pool People, Jeffrey Desing, and Janelle Desing*, Case No. 23-cv-01368-JAD-DJA (D. Nev. Sept. 1, 2023).

13. On August 15, 2024, the Court dismissed the action with prejudice pursuant to the parties' stipulation.

14. As of January 21, 2025, approximately $ 275,000.00 is due and owing on the Debtor's obligations to UAG on the agreed settlement amount, however the default in payments would unwind the settlement and the amounts due and owing are in dispute.

### *The SBA Obligations, Collateral, and Guaranty*

15. On or about June 13, 2020, the Debtor executed and delivered to the SBA a promissory note in the original principal amount of $150,000 as part of the Economic Injury Disaster Loan program. The Debtor executed and delivered to the SBA a Security Agreement dated June 13, 2020 granting the SBA a security interest in substantially all assets of the Debtor.

16. On or about December 2, 2021, the Debtor executed and delivered to the SBA a modified note in the original principal amount of $500,000. The Debtor executed and delivered to the SBA an Amended Security Agreement dated December 2, 2021 continuing the SBA's security interest in substantially all assets of the Debtor.

17. The Debtor's obligations to the SBA are unconditionally guaranteed by Jeffrey J. Desing by virtue of an Unconditional Guarantee given to the SBA December 2, 2021.

18. As of January 21, 2025, approximately $500,000.00 is due and owing on the Debtor's obligations to the SBA.

### *The Channel Obligation, Collateral, and Guaranty*

19. On or about March 20, 2024, the Debtor executed and delivered to Channel a Business Loan and Security Agreement in the original principal amount of $150,000. The agreement also granted Channel a security interest in substantially all assets of the Debtor.

20. The Debtor's obligations to Channel are guaranteed by Jeffrey J. Desing by virtue of a Guaranty given to Channel on March 20, 2024.

21. As of January 21, 2025, approximately $77,036.23 is due and owing on the Debtor's obligations to Channel.

### *The OnDeck Obligation and Guaranty*

22. On or about March 20, 2024, the Debtor executed and delivered to OnDeck a Business Loan Agreement in the original principal amount of $200,000.

23. This amount is guaranteed by Jeffrey J. Desing by virtue of a Guaranty given to OnDeck on March 20, 2024.

24. As of January 21, 2025, approximately $125,402.33 is due and owing on the Debtor's obligations to OnDeck.

### *The Everest Obligations and Guaranty*

25. On or about April 30, 2024, the Debtor executed and delivered to Everest a Revenue Based Financing Agreement in the original principal amount of $250,250.

26. This obligation is guaranteed by Jeffrey J. Desing by virtue of a Guaranty given to Everest on April 30, 2024.

27. On or about September 26, 2024, the Debtor executed and delivered to Everest a Revenue Based Financing Agreement in the original principal amount of $393,250.00.

28. This obligation is guaranteed by Jeffrey J. Desing by virtue of a Guaranty given to Everest on September 26, 2024.

29. As of January 21, 2025 approximately $328,185.27 is owed on the Debtor's obligations to Everest.

### *The Fundr Obligations, Guaranty, and Lawsuit*

30. On or about July 31, 2024, the Debtor executed and delivered to Fundr a Future Receivables Purchase Agreement in the original principal amount of $181,250.

31. This obligation is guaranteed by Jeffrey J. Desing by virtue of a Guaranty given to Everest on July 31 2024.

32. On January 8, 2025, Fundr sued the Debtor and Jeffrey Desing in the Supreme Court of the State of New York, County of Nassau seeking damages for an alleged breach of the agreement. *Atipana Credit Opportunity Fund I, LP dba Fundr v. Central Housewares, Inc. d/b/a The Pool People and Jeffrey Desing.*

33. As of January 21, 2025 approximately $78,220.82 is owed on the Debtor's obligation to Fundr.

## Argument

34. Section 105(a) authorizes a bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code. 11 U.S.C. § 105(a). "Though section 105(a) does not give the bankruptcy court carte blanche—the court cannot, for example, take an action prohibited by another provision of the Bankruptcy Code—it grants the extensive equitable powers that bankruptcy courts need in order to be able to perform their statutory duties." *Caesars Entertainment Operating Co. v. BOKF, N.A. (In re Caesars Entertainment Operating Co.)*, 808 F.3d 1186, 1188 (7th Cir. 2015). To that end, bankruptcy courts can enjoin other proceedings in non-bankruptcy courts "when [the bankruptcy court] is satisfied that such proceedings would defeat or impair its jurisdiction over the case before it." *In re L&S Indus., Inc.*, 989 F.2d 929, 932 (7th Cir. 1993).

35. "To obtain an injunction under section 105(a), it is unnecessary to satisfy the traditional elements for injunctive relief." *Caesars Entertainment Operating Co. v. BOKF, N.A. (In re Caesars Entertainment Operating Co.)*, 561 B.R. 441, 450 (Bankr. N.D. Ill. 2016). Rather, the bankruptcy court must assess whether: (1) third-party litigation would defeat or impair its jurisdiction over the case before it; (2) there is a likelihood of success on the merits, "which in this context means the likelihood of a successful reorganization"; and (3) the injunction would serve the public interest." *Id.* (quoting *Fisher v. Apostolou*, 155 F.3d 876, 882 (7th Cir. 1988), which quotes *L&S Indus., Inc.*, 989 F.2d at 932, and cites *In re Excel Innovations*, 502 F.3d 1086, 1095 (9th Cir. 2007) and *Lyondell Chem. Co. v. CenterPoint Energy Gas Servs., Inc. (In re Lyondell Chem. Co.)*, 402 B.R. 571 588–89 (Bankr. S.D.N.Y. 2009)). "The debtor need not show irreparable harm or an inadequate remedy at law." *Id. See also In re Coast to Coast Leasing, LLC*, 661 B.R. 621, 624 (Bankr. N.D. Ill. 2024) (noting that after Purdue Pharma, "success on

the merits" cannot be based on the likelihood of obtaining a non-consensual third party release, but rather, where there is a likelihood that "providing the debtor's management a breathing spell from the distraction of other litigation is necessary to permit the debtor to focus on the reorganization of its business" or "parties may ultimately be able to negotiate a plan that includes a consensual resolution of the claims against the non-debtors").

36. First, continuance of the existing litigation or comencement of new litgiation would defeat this Court's jurisidction over the Debtor's bankruptcy case and undermine its ability to efficiently oversee the administration of the estate:

- Any judgment against Mr. Desing would give rise to a claim for contribution between Mr. Desing and the Debtor. The execution upon such judgments would interfere with the ongoing operations of the business.

- The plan will provide for the unimpaired repayment of the SBA obligation according to its terms, and the repayment of the secured Channel obligation in full over a period of 7 years. The plan will provide for a projected divided of approximately 20% to unsecured creditors over a period of 5 years (this amount may change as the projections for the Plan finalize). Allowing these creditors to continue or commence collection activity against Mr. or Mrs. Desing would frustrate the Code's policy of collective meaningful distribution.

- Finally, and importantly, Mr. Desing is an essential part of the Debtor's reorganization efforts. Mr. Desing has extensive knowledge of the Debtor's business, is intimately involved in its day-to-day operations, and additionally has served in CFO roles for successful private-sector homebuilding, manufacturing, and health and wellness companies before taking over the Debtor. Allowing any of the Defendants to continue or commence collection activity against him would frustrate the Debtor's ability to timely prosecute approval and implementation of the plan by depriving the Debtor of his time and talents (for if he is required to defend suits or pay judgments on these suits, he will be hard pressed to focus on making the reorganized debtor successful). The plan will obviously require significant management contributions of Mr. Desing.

- Allowing any of the Defendants to continue or commence collection activity against Mrs. Desing will necessarily have the same distractive effect on Mr. Desing, considering all of the obligations here are collectible from marital property, and neither Mr. nor Mrs. Desing have any individual property. If Mr. Desing were forced to pay 25% of this pay in the form of a continuing garnishment, he would need to increase his rate of pay from the debtor, thus depriving all claimants of their share of profits equal to such increased compensation.

37. Second, the Debtor is likely to achieve a successful reorganization under chapter 11 of the Bankruptcy Code. The Debtor commenced these cases to address in part its substantial debt and defaults under various loan agreements, including with the Defendants in this adversary proceeding. In the months before filing these cases, the Debtor worked with its counsel to address its operating budget, reduce unnecessary expenses, and begin preparation of the plan of reorganization. There are no reasons that lead to the conclusion that the Debtor cannot successfully reorganize promptly.

38. Finally, an injunction would serve the public interest in promoting a successful reorganization of the Debtor's businesses. Furthermore, an injunction will allow settlement discussions to take place without the immediate threat of an adverse judgment against the principal of the debtor that would threaten or delay the reorganization. Numerous courts have recognized that promoting a successful reorganization is one of the most important public interests embodied in the Bankruptcy Code. "In the bankruptcy context, the relevant public interest is the interest in successful reorganizations, since reorganizations preserve value for creditors and ultimately the public." *Caesars*, 561 B.R. at 453. *See also In re Otero Mills, Inc.*, 25 B.R. 1018, 1021 (D.N.M. 1982) (observing that "the public interest lies in promoting a successful reorganization."); *Rehabworks, Inc. v. Lee (In re Integrated Health Servs.)*, 281 B.R. 231, 239 (Bankr. D. Del. 2002) ("promoting a successful reorganization is one of the most

important public interests."). Indeed, "when a chapter 11 estate seeks to enjoin a collection action against one of its insiders or officers, many courts find a public policy in favor of reorganizations, and thus find that actions which promote reorganization serve the public interest." 2 Collier on Bankruptcy ¶ 105.03[1][d] (16th ed. 2022), LexisNexis.

## Conclusion

39. For the above reasons, the Debtor respectfully requests that the Court (A) issue a preliminary injunction pursuant to 11 U.S.C. § 105(a) prohibiting the Defendants from continuing or commencing any judicial or other proceeding or otherwise exercising their rights against Jeffrey J. Desing or Janelle Desing on account of their guaranties of the Debtor's obligations that will be paid pursuant to the plan pending confirmation of the plan or further order of the Court; and (B) grant such other relief as the Court deems just and appropriate.

Dated: January 29, 2025.

**SWANSON SWEET LLP**

By: */s/ Paul G. Swanson*
Paul G. Swanson
Michael C. Jurkash
107 Church Avenue
Oshkosh, WI 54901
Tel: (920) 235-6690; Fax: (920) 426-5530
pswanson@swansonsweet.com
mjurkash@swansonsweet.com

***Proposed Counsel for the Debtor***